**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RAYMOND M. PFEIL AND MICHAEL
KAMMER,

      Plaintiffs,

v.

STATE STREET BANK AND TRUST
COMPANY,

      Defendant.
                                     /

CASE NO. 09-CV-12229

HONORABLE DENISE PAGE HOOD

**MEMORANDUM OPINION AND ORDER
REGARDING DEFENDANT'S MOTION TO DISMISS**

**I.    BACKGROUND/FACTS**

This matter is before the Court on Defendant State Street Bank and Trust Company's ("State Street") Motion to Dismiss under Rule 12(b)(6) of the Rules of Civil Procedures. A response and reply have been filed and a hearing held on the matter. For the reasons set forth below, the Court grants State Street's Motion to Dismiss.

Plaintiffs Raymond M. Pfeil and Michael Kammer ("Plaintiffs") filed the instant suit, individually and on behalf of others similarly situated, against State Street pursuant to Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, on behalf of plan participants in and beneficiaries of General Motor Corporation's ("GM") two main 401(k) plans, the General Motors Savings-Stock Purchase Program for Salaried Employees ("Salaried Plan") and the General Motors Personal Savings Plan for Hourly Employees ("Hourly Plan") (collectively, "Plans"). (Complaint, ¶ 1) The one-count Complaint alleges a breach of fiduciary duty by State

Street, as an independent fiduciary, for failure to prudently manage the Plans' assets, in violation of Section 404 of ERISA.

The Plans are defined contribution profit sharing plans, referred to as 401(k) plans. The benefits each participant receives are based on the amount of contributions in the participant's account and the investment performance of those contributions. (Complaint, ¶¶ 1, 3-4) The Plans offered several investment options, including mutual funds, non-mutual fund investments and the GM Common Stock Fund. (Salaried Plan, Art. I, § 5; Hourly Plan Art. VII, § 7.01(a)) Contributions to the Plan are invested "in accordance with the Employee's election." *Id.* If an employee does not elect an option, the investments are placed in the Pyramis Strategic Balanced Fund, not the GM Stock Fund. (Salaried Plan, Art. 1, §§ 5(C), (D) and 6; Hourly Plan, Art. VII, § 7.01(a)) Plan participants may change the allocation of the assets in their Plan accounts between several options "on any Business Day of the month" up to "100%." (Salaried Plan, Art. I, § 8(B); Hourly Plan, Art. VII, § 7.01(d)(ii)).

The GM Common Stock Fund "is intended to be a separate stock bonus plan and employee stock ownership plan ("ESOP") satisfying the requirements of Section 401(a), certain subsections of 409, and Section 4975(e) of the Code." (Salaried Plan, Art. III, p. 70; Hourly Plan, Art. X, § 10.01, p. 80) The purpose of the ESOP is "to enable Participants to acquire an ownership interest in General Motors and is intended to be a basic design feature" of the Plans. *Id.* The ESOP funds "shall be invested exclusively in GM $1-2/3 par value common stock ... without regard to (i) the diversification of assets, (ii) the risk profile of investments in GM [common sock]." *Id.*

On June 30, 2006, State Street and GM entered into an engagement letter which allowed State Street to be the Fiduciary and Investment Manager for the Company Stock Fund. (Complaint,

2

¶ 2) Under the Agreement, State Street was responsible to exercise its judgment and discretion to determine whether to continue offering the Company Stock Fund investment option. The Agreement limited State Street's discretion: "State Street will exercise independent discretionary judgment in the performance of its obligations hereunder in accordance with the fiduciary requirements set forth in ... ERISA, subject to the statement of Company Intent in Section 4 hereof." (Agreement, pp. 2-3) Section 4 provides:

> The Company confirms to State Street that it is the Company's intent in its settler capacity, that the Company Stock Fund continue to be invested exclusively in Company Stock ... without regard to (A) the diversification of assets of each Plan and Trust, (B) the risk profile of Company Stock, (C) the amount of income provided by Company Stock, or (D) the fluctuation in the fair market value of Company stock, unless State Street, using an abuse of discretion standard, determines from reliable public information that (i) there is a serious question concerning the Company's short-term viability as a going concern without resort to bankruptcy proceedings; or (ii) there is no possibility in the short-term of recouping any substantial proceeds form the sale of stock in bankruptcy proceedings.

(Agreement, p. 3)

Plaintiffs claim that on June 30, 2006 when State Street became the Fiduciary, GM was already in serious financial trouble. (Complaint, ¶ 23) By the time State Street assumed fiduciary responsibility for the GM stock in the Plans, numerous securities analysis and experts were already discussing a possible GM bankruptcy filing. *Id.* GM's financial condition continued to deteriorate throughout 2007 and the first Quarter of 2008 with a $39 billion Third Quarter 2007 loss. *Id.,* ¶¶ 28, 30. On July 15, 2008, GM Chief Executive Officer Rick Wagner announced that GM needed to implement a restructuring plan to combat Second Quarter 2008 losses that he described as "significant" and to stem an impending liquidity crisis. *Id.,* ¶ 34. GM's financial condition continued to spiral out of control and on August 1, 2008, GM announced a Third Quarter 2008 net

loss of $15.5 billion. *Id.*, ¶ 38. Analysts projected that GM was on track to run out of cash by the First Quarter of 2009. *Id.,* ¶ 39. In its November 10, 2008 Form 10-Q for the Third Quarter of 2008, GM acknowledged that its auditors had "substantial doubt" regarding GM's "ability to continue as a going concern." *Id.,* ¶ 46. In a November 2, 2008 notice to participants and beneficiaries, State Street temporarily suspended the purchases of the GM Common Stock Fund until further notice noting that "it is not appropriate at this time to allow additional investments by participants." *Id.*, ¶ 49. It was not until March 31, 2009 that State Street decided to divest the GM stock held in the fund, with the process completed by April 24, 2009. *Id.,* ¶ 51.

Plaintiffs claim that State Street breached its fiduciary duty by failing to act in the face of an onslaught of red flags clearly indicating that GM stock was an imprudent investment causing the people who rely on the assets in the Plans to fund their retirement, to suffer hundreds of millions of dollars in losses. *Id.,* ¶ 52. Plaintiffs thereafter filed the instant Complaint.

State Street now moves to dismiss the Complaint asserting: 1) Plaintiffs have not pleaded facts demonstrating a plausible claim to overcome the presumption of prudence for holding GM stock in the Plans; 2) State Street was required to keep GM stock in the Plans until public information called into serious question the short-term viability of GM as a going concern or there was no possibility of recouping any substantial proceeds from the sale of stock in bankruptcy proceedings; and, 3) Plaintiffs have not pleaded facts showing that State Street proximately caused any loss to Plaintiffs.

## II. ANALYSIS

### A. Standard of Review under Rule 12(b)(6)

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), under Rule 12(b)(6) of the Rules of Civil Procedures, the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted). Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563. The Supreme Court clarified in *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1948-50, 173 L.Ed.2d 868 (2009) that "bare assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," for the purposes of ruling on a motion to dismiss, are not entitled to "an assumption of truth." *Iqbal,* 129 S.Ct. at 1951. Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. After *Iqbal* and *Twombly,* to survive a Rule 12(b)(6) motion to dismiss, the non-conclusory "factual content" in the complaint and the reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show [n]"--"that the

5

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

### B. Presumption of Prudence and Requirement to Keep GM Stock

State Street argues that Plaintiffs have not pleaded facts demonstrating a plausible claim to overcome the presumption of prudence for holding GM stock in the Plans. Plaintiffs agree that State Street is afforded a presumption of prudence as to the ESOP plans at issue. However, Plaintiffs argue that this does not mean that State Street is no longer subject to ERISA's general fiduciary responsibility or no longer owes the Plans and their participants a duty of prudence. Plaintiffs claim that it simply means that ESOP fiduciaries like State Street are afforded a "presumption of prudence" when determining whether they have breached their fiduciary duty. Plaintiffs assert that they have rebutted the presumption of prudence, that they are not required to show "impending" or "imminent" collapse (even though Plaintiffs claim they have), and that State Street cannot override ERISA's duty of prudence by including self-serving language in its Agreement with GM that purport to lower the operative ERISA standards.

The Sixth Circuit has noted:

> In drafting the ESOP provisions of ERISA, Congress intended to encourage employees' ownership of their employer company. In order to promote this goal, Congress carved out specific exceptions to certain fiduciary duties in the case of an ESOP.

*Kuper v. Iovenko,* 66 F.3d 1447, 1458 (6th Cir. 1995). "[A]s a general rule, ESOP fiduciaries cannot be held liable for failing to diversify investments, regardless of whether diversification would be prudent under the terms of an ordinary non-ESOP pension plan." *Id.* The Sixth Circuit went on to note that,

> [A] proper balance between the purpose of ERISA and the nature of ESOPs requires ... a review [of] an ESOP fiduciary's decision to invest in employer securities for an abuse of discretion. In this

6

regard, we will presume that a fiduciary's decision to remain invested in employer securities was reasonable.

*Id.* at 1459. A plaintiff may rebut the "presumption of reasonableness" by showing "that a prudent fiduciary acting under similar circumstances would have made a different investment decision." *Id.* It will not be enough to prove that the stock was an unwise investment or that defendants ignored a decline in stock price. *In re General Motors ERISA Lit.,* 2006 WL 897444 * 11 (E.D. Mich. Apr. 6, 2006). "[A] fiduciary's duty is limited to those aspects of the plan over which he exercises authority or control." *In re Delphi Corp. Sec., Deriv. and ERISA Litig.,* 602 F. Supp. 2d 810, 820 (E.D. Mich. 2009).

The Agreement between GM and State Street noted that "State Street will exercise independent discretionary judgment in the performance of its obligations hereunder in accordance with the fiduciary requirements set forth in ... ERISA, subject to the statement of Company Intent in Section 4 hereof." (Agreement, pp. 2-3) The Agreement expressly limited State Street's discretionary judgment in Section 4 which provides:

> The Company confirms to State Street that it is the Company's intent in its settler capacity, that the Company Stock Fund continue to be invested exclusively in Company Stock ... without regard to (A) the diversification of assets of each Plan and Trust, (B) the risk profile of Company Stock, (C) the amount of income provided by Company Stock, or (D) the fluctuation in the fair market value of Company stock, unless State Street, using an abuse of discretion standard, determines from reliable public information that (i) there is a serious question concerning the Company's short-term viability as a going concern without resort to bankruptcy proceedings; or (ii) there is no possibility in the short-term of recouping any substantial proceeds form the sale of stock in bankruptcy proceedings.

(Agreement, p. 3)

Plaintiffs would have the Court ignore the Agreement between GM and State Street limiting

State Street's discretion over the ESOP plan. It is clear from the Agreement that State Street must "exclusively" invest in GM's stock, no matter the risk, the amount of income and fluctuation in the fair market value of the stock. The Agreement provides that State Street may diversify only in two situations: there is a serious question concerning GM's short-term viability as a going concern without resorting to bankruptcy proceedings, or, there is no possibility in the short-term of recouping any substantial proceeds from the sale of stock in the bankruptcy proceedings. Plaintiff has sufficiently established that GM was in serious financial trouble on June 30, 2006 when State Street became the ESOP plan Fiduciary and Investment Manager and on the verge of bankruptcy shortly thereafter. Based on the Agreement, State Street was only allowed to invest in the ESOP GM stocks, no matter how the stock was performing.

However, the Agreement provides State Street with the discretion, albeit subject to an abuse of discretion standard, not to invest in GM stock in the two situations noted above. The Complaint alleges facts to allow the reasonable inference to rebut the presumption of prudence given to State Street. The Complaint also alleges sufficient facts to allow the reasonable inference that there existed a serious question concerning the Company's short-term viability as a going concern without resorting to bankruptcy proceedings or there was no possibility in the short-term of recouping any substantial proceeds form the sale of stock in bankruptcy proceedings sufficient for State Street to exercise its fiduciary discretion.

The Court notes State Street's argument that many ERISA "stock drop" class actions filed recently have been dismissed on motions to dismiss. *See, e.g., In re Huntington Bancshares, Inc. ERISA Litig.,* 620 F. Supp. 2d 842, 852 (S.D. Ohio 2009). In that case, the district court noted that a duty to investigate only arises when there is some reason to suspect that investing in company

stock may be imprudent–that is, "there is must be something akin to a 'red flag' of misconduct." *Id.* at 852. The Complaint alleges sufficient "red flags" that should have placed State Street on notice of a need to cease offering GM stock to Plan participants or to liquidate the ESOP funds prior to March 2009.

### C. Causation

State Street argues that Plaintiffs have not pleaded facts showing that State Street proximately caused any loss to Plaintiffs. In response, Plaintiffs assert that because State Street did not exercise its fiduciary duty to divest the GM stock until March 31, 2009, this caused the Plans hundreds of millions of dollars in losses. (Comp., ¶ 71) Plaintiffs claim the fact that the individual GM Plan participant could have sold their GM stock does not absolve State Street of its fiduciary duty to divest the Plans of GM stock. State Street argues that Plaintiffs are suing on behalf of the Plans.

The Sixth Circuit has held that to prevail on a breach of fiduciary duty claim under ERISA, a plaintiff must generally prove that the defendant not only breached its fiduciary duty but also caused harm by that breach. *Kuper,* 66 F.3d at 1457; *Romberio v. Unumprovident Corp.,* 2009 WL 87510 (6th Cir. Jan. 12, 2009) ("A causal connection between the alleged breach and the alleged harm" is an element of an ERISA breach of fiduciary duty claim.). Section 404(c) provides that a trustee of a plan is not liable for any loss caused by any breach which results from the participant's exercise of control over those assets. 29 U.S.C. § 1104(c)(2)(B). The Second Circuit Court of Appeals, in reviewing the same Plans at issue in this case, held that ERISA contemplates a failure to diversify claim when a plan is undiversified as a whole. *Young v. General Motors Investment Management Corporation,* 325 Fed. Appx. 31, 29 WL 1230350 (2d Cir. May 6, 2009); 29 U.S.C.

9

§ 1104(a)(1)(C). State Street argues that it was a defendant in the Second Circuit case which involved the same plans at issue in this case, therefore, Plaintiffs in this case are in privity with the GM plan participants and are bound by the Second Circuit's opinion in *Young. See Hickman v. C.I.R.,* 183 F.3d 535, 537 (6th Cir. 1999). As in this case, the Second Circuit noted that plaintiffs only allege that individual funds within the plan were undiversified. The Second Circuit held that "[t]he complaint's narrow focus on a few individual funds, rather than the plan as a whole, is insufficient to state a claim for lack of diversification." *Id.* The Seventh Circuit has also affirmed a dismissal of a breach of fiduciary duty claim because the plan, as in this case, offered a sufficient range of investment options "so that the participants have control over the risk of loss." *Hecker v. Deere & Company,* 556 F.3d 575 (7th Cir. 2009).

Plaintiffs agree that only the ESOP funds under the Plans are at issue. They do not dispute that the Plans offer several diverse investment options for participants to choose for themselves. The Plans at issue allow the participants to change the allocation of the assets from one account to another on any business day. Plaintiffs had total control over how to allocate their assets. As alleged in their Complaint, Plaintiffs had knowledge at the time State Street became the fiduciary, that GM was in financial trouble yet they continued to invest in the ESOP. State Street cannot be held liable for actions which Plaintiffs controlled. The facts alleged by Plaintiffs are not plausible to draw the reasonable inference that State Street is liable under a breach of fiduciary duty claim since Plaintiffs cannot show causation. The Complaint must be dismissed for failure to state a claim upon which relief may be granted.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that State Street's Motion to Dismiss **(Doc. No. 19, filed September 4, 2009)** is GRANTED.

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice.

S/Denise Page Hood  
Denise Page Hood  
United States District Judge

Dated: September 30, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2010, by electronic and/or ordinary mail.

S/William F. Lewis  
Case Manager